UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11959-GAO

MARK MCCRAY,
Petitioner,

v.

LISA MITCHELL,
Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION
October 28, 2014

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has recommended that McCray's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied. The petitioner has filed an objection to the Report and Recommendation ("R&R"). After carefully reviewing the pleadings, the parties' submissions, the R&R (dkt. no. 35), and the objections made by the petitioner to the R&R, I agree with the magistrate judge's analysis and conclusions. Neither of the Supreme Court cases cited by the petitioner in his objections, Porter v. McCollum, 130 S.Ct. 447 (2009) and Hall v. Florida, 134 S.Ct. 1986 (2014), affects or alters the analysis.

Accordingly, I ADOPT the magistrate judge's recommendation. The Petition (dkt. no. 1) for Writ of Habeas Corpus is DENIED.

Because the petitioner has not made "a substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

# United States District Court
# District of Massachusetts

MARK McCRAY,
       Petitioner,

   v.                         CIVIL ACTION NO. 11-11959-DJC

LISA MITCHELL,
       Superintendent, OCCC,
         Respondent.

## *REPORT AND RECOMMENDATION ON PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS (#1)*

COLLINGS, U.S.M.J.

### *I. Introduction*

Mark McCray ("McCray" or "petitioner") was convicted by a jury in the Massachusetts Superior Court of first degree murder, kidnapping, and four counts of assault and battery with a dangerous weapon. His conviction was affirmed in a comprehensive opinion by the Supreme Judicial Court ("SJC") reported as *Commonwealth v. McCray*, 457 Mass. 544, 931 N.E.2d 443 (2010).

He seeks issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Because habeas review is limited, and because of the manner in which the SJC disposed of McCray's claims, there is no need for this Court to linger long on his habeas petition.

The Court incorporates by reference the SJC's opinion, especially its treatment of the factual findings made by the trial court. Those findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1).

Further, the Court applies the standard of review applicable in § 2254 cases. "[A] federal court may not issue a habeas petition 'with respect to any claim that was adjudicated on the merits in State court proceedings' unless the state court decision: 1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *McCambridge v. Hall,* 303 F.3d 24, 34 (1st Cir. 2002) (quoting 28 U.S.C. § 2254(d) (Supp. II 1996)). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the

---

[1] The petitioner has exhausted his state court remedies, and his petition was timely filed.

2

Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision represents an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. An "unreasonable application" requires "some increment of incorrectness beyond error . . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge*, 303 F.3d at 36 (internal quotation marks and citation omitted). The Supreme Court has explained that:

> [t]his distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

*Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks, citations and footnote omitted).

Furthermore,

> [w]hen assessing whether a state court's application of

3

federal law is unreasonable, the range of reasonable judgment can depend in part on the nature of the relevant rule that the state court must apply. Because AEDPA authorizes federal courts to grant relief only when state courts act *unreasonably*, it follows that [t]he more general the rule at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—the more leeway [state] courts have in reaching outcomes in case-by-case determinations.

*Id.* at 776 (internal citation and quotation marks omitted; second and third alterations in original). *See also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (where the federal standard is general, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard").

In his petition, McCray challenges the constitutionality of his detention on two main grounds: (1) that his counsel was ineffective for not introducing evidence of mental defect in his motion to suppress, for moving to include the tape of Nicole Fernandes, for not objecting to the adoptive admissions, for not requesting a jury instruction on humane practice, for not objecting to inflammatory evidence of urination, and for denigrating the defense expert thereby undermining and abandoning petitioner's sole defense, and (2) that the judge erred in not making a required finding of second degree murder.

The Court can find no evidence, and the petitioner points to none, that the SJC's decision "was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." All of the facts relied on by the Court were fully supported and eminently reasonable.

What McCray does contend is that the SJC's decision was contrary to, or involved an unreasonable application of, clearly established Federal law.

## II. Analysis

### Ground One: Ineffectiveness of Counsel

The petitioner argues that his trial counsel was ineffective for making unreasonable strategic decisions both in preparation for and during trial. In order to prove ineffective assistance of counsel in this context, the petitioner must first show that counsel failed to render "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court has interpreted "effective assistance" to mean "the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions." *Id.* at 688. The First Circuit has consistently stated the standard in these words, *viz.*, "[i]t is only where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it,' that the ineffective assistance prong is satisfied." *Knight v. Spencer,* 447 F.3d 6, 15 (1st

Cir. 2006).[2] Moreover "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690.

Second the petitioner must show that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692. In order to establish prejudice, there needs to be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A defendant's failure to satisfy one prong of the *Strickland* test obviates the need for a court to consider the remaining prong." *Knight,* 447 F.3d at 15 (citing *Strickland,* 466 U.S. at 697).

The SJC, in deciding the claims in the petitioner's appeal, used the

---

[2]

 In the *Knight* opinion, no attribution is given for the quotation. However, research has revealed that it comes from the Fifth Circuit's *en banc* decision in *Strickland,* i.e., *Washington v. Strickland,* 693 F.2d 1243, 1254 (5th Cir. 1982). The Fifth Circuit's decision was reversed the Supreme Court in *Strickland,* 466 U.S. 668, an opinion which was issued over twenty years before the First Circuit's decision in *Knight.* However, despite the quotation coming from a decision was which was reversed, the quotation is not in conflict with the Supreme Court's holding in *Strickland,* and the First Circuit has, as recently as December, 2013, cited the principle as current law. *Pena v. Duckhaut,* 736 F.3d 600, 605 (1st Cir. 2013); *see also United States v. Valerio,* 676 F.3d 237, 246 (1st Cir. 2012); *United States v. Rodriguez,* 675 F.3d 48, 56 (1st Cir. 2012); *West v. United States,* 631 F.3d 563, 567 (1st Cir.), *cert. denied,* 132 S.Ct. 268 (2011); *Tevlin v. Spencer,* 621 F.3d 59, 66 (1st Cir. 2010); *Abrante v. St. Amand,* 595 F.3d 11, 19 (1st Cir.), *cert. denied,* 131 S.Ct. 168 (2010). The Court thus applies the standard set forth in the *Knight* case in the instant case.

standard for ineffectiveness of counsel pursuant to Mass. Gen. L. c. 278 § 33E.[3]
This standard focuses on whether there was a serious failure by trial counsel
and, if so, whether the failure resulted in a substantial likelihood of a
miscarriage of justice. The SJC has already opined that this standard is "more
favorable to a defendant than is the constitutional standard for determining the
ineffectiveness of counsel." *Commonwealth v. Wright*, 411 Mass. 678, 682, 584
N.E.2d 621, 624 (1992); *Commonwealth v. Martin*, 467 Mass. 291, 316, ___
N.E.3d ___, 2014 WL 702311, at *16 (Mass. Feb. 26, 2014). Further, the First
Circuit has held that "where the SJC applies its more favorable substantial
likelihood of a miscarriage of justice standard, its decision will not be deemed
contrary to the *Strickland* criterion." *Knight*, 447 F.3d at 15 (internal quotation
marks omitted).

---

[3]

The Massachusetts law governing review of capital cases by the SJC provides:

> In a capital case as hereinafter defined the entry in the supreme judicial
> court shall transfer to that court the whole case for its consideration of the
> law and the evidence. Upon such consideration the court may, if satisfied
> that the verdict was against the law or the weight of the evidence, or
> because of newly discovered evidence, or for any other reason that justice
> may require (a) order a new trial or (b) direct the entry of a verdict of a
> lesser degree of guilt, and remand the case to the superior court for the
> imposition of sentence.

Mass. Gen. L. c. 278 § 33E.

But in the end, in order to gain habeas corpus relief in federal court, the petitioner must establish that the SJC unreasonably applied the *Strickland* standard to the petitioner's claims of ineffective counsel. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 785 (2011). The petitioner has failed to establish any unreasonable application.

First, the petitioner alleges that his counsel was ineffective for failing to introduce evidence of the petitioner's mental condition at the time police statements were given despite having reports relating to this issue in his possession. (#1 at 6 ¶ 12(a)) During a pre-trial motion *in limine*, defense counsel tried and failed to suppress the statements made by the petitioner based on the assertion that the petitioner's mental defects (his alleged substance abuse, mental retardation, and illiteracy) made his waiver involuntary. (#2 at 9) However, defense counsel did not introduce evidence at the motion hearing other than the statements made in his brief. Petitioner argues that this failure amounts to ineffectiveness of counsel, in violation of the Sixth Amendment.

In order to ascertain whether there was a substantial miscarriage of justice, the SJC had to determine if the disparity between the statements made and the proffered evidence at hearing amounted to an "error by the trial

counsel, and whether the error likely influenced the outcome of the proceedings." *McCray*, 457 Mass. at 553, 931 N.E.2d at 451. The SJC opined that counsel was not ineffective for failing to produce evidence of the petitioner's 'mental retardation' and illiteracy particularly because the weak evidence uncovered would not have been enough to overcome the trial judge's ruling to allow the evidence in. *McCray*, 457 Mass. at 554, 931 N.E.2d at 451-52. The petitioner contends that medical records and psychiatric records, some of which were later produced at trial, clearly would have shown that his Miranda waiver was involuntary due to his mental disabilities and his constant substance and alcohol abuse. However the SJC stated that this potential evidence would not have changed the outcome, as the petitioner's testimony in the tape recorded interview evidences a "coherent, rational, and self-serving" person who "exhibited sophistication and familiarity with his rights at the time of the interview." *Id.*, 457 Mass. at 554-55, 931 N.E.2d at 451-52.

Manifestly, these holdings were not an unreasonable application of the *Strickland* standard. The SJC's judgment that the evidence of mental defect was scant and unconvincing was fully supported. Counsel can not be deemed ineffective for failing to pursue futile arguments. *Knight*, 447 F.3d at 16; *see also*

*Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999), *cert. denied,* 528 U.S. 1163 (2000).

Second, petitioner argues that counsel was ineffective for successfully seeking to admit into evidence Nicole Fernandes' recorded statements to the police. McCray's counsel sought to introduce the evidence not for its truth but for evidence of Fernandes' state of mind. (#1 at 6 ¶12 (a)) McCray alleges that this testimony hurt his defense as the jury was not allowed to deliberate on the partially exculpatory statements, such as the statement that McCray never hit the victim, for the truth of the matter asserted. The SJC affirmed the lower court's ruling that counsel was not ineffective.

As the SJC frankly stated, the case against the petitioner was strong with "presence, involvement, and motive" all established by direct evidence. *McCray,* 457 Mass. at 555, 931 N.E.2d at 452. The defense tactic was to show that the petitioner lacked the specific intent for the crime. To do so, defense counsel advanced a theory that McCray was a follower and that Fernandes, who dubbed herself the victim's "worst fear incarnate," was the prime mover. *Id.,* 457 Mass. at 548, 931 N.E.2d at 448. Fernandes' recorded statement was the best chance to show the jury the Fernandes' remorselessness which would be used to argue

that McCray had no choice but to participate in the crimes. While this strategy ultimately failed, the SJC reasonably believed that this was not only a viable strategy, but likely the only available strategy for counsel to take. *Id.,* 457 Mass. at 557, 931 N.E.2d at 453-54. The SJC noted that this limited purpose went directly to the reasonable strategy of the defense and opined that the decisions made by counsel were not manifestly unreasonable. *Id.,* 457 Mass. at 557, 931 N.E.2d at 454.

The SJC's affirmation of the lower court decision and its interpretation of the *Strickland* standard was not unreasonable. When looking at strategic choices made by counsel, a reviewing court must be somewhat deferential, applying "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. "When [. . .] counsel's decision to elicit potentially damaging testimony is part of a plausible trial strategy, that decision does not fall below an objective standard of reasonableness." *Janosky v. St. Amand,* 594 F.3d 39, 48 (1st Cir. 2010)(footnote omitted). The SJC aptly included the trial counsel's decision to use Fernandes' testimony as part of a viable and plausible trial strategy. This

conclusion was not a misapplication of the *Strickland* standard.[4]

Third, petitioner argues his counsel was ineffective in failing to object or to require a hearing to determine whether post-killing statements made by Nicole Fernandes in his presence could be admitted against him as an adoptive admission or admission by silence. (#1 at 6 ¶ 12(a)) The Commonwealth offered evidence through the testimony of one Johnson that the facts of the murder were revealed by McCray and also by Fernandes and Williams in McCray's presence. Petitioner states that his counsel should have brought forth evidence of petitioner's lack of sobriety and mental acuity at the time of these statements so as to preclude their use as adoptive admissions, and the failure to do so amounted to a constitutional deficiency.

The SJC noted that in opposition to a pre-trial motion to admit Fernandes' statements as adoptive admissions, petitioner's counsel argued ". . .that there was insufficient evidence that he [petitioner] adopted the others' [Williams and Fernandes] statements." *McCray*, 457 Mass. at 558, 931 N.E.2d at 454. The

---

4

Petitioner alleges that the statements should have come in for the truth of the matter and not just to show Fernandes' state of mind. (#2 at 18) However, the recording of Fernandes, and the potential exculpatory statements within it, would not have been able to come in for the truth of the matter because they are hearsay. The only way to get the admissions in, over the objection of the Commonwealth, was to use them for the limited purpose of showing Fernandes' state of mind. *McCray*, 457 Mass. at 555-56, 931 N.E.2d at 452-53. That is what counsel did.

trial judge ruled that Johnson would be allowed to testify ". . . subject to objections made by defense counsel at that time." *Id.* McCray's counsel did not object to Johnson's testimony during trial as to McCray's statements and the statement made in his presence. *Id.*, 457 Mass. at 558-59, 931 N.E.2d at 455. However, the SJC opined that such objections would have been "futile because, at every turn, the Commonwealth established that the [petitioner] manifested his acceptance of the truth of the statements by Williams and Fernandes," and, "[i]n the circumstances, there was sufficient foundation to admit the statements made in the presence. . ." as adoptive admissions. *Id.*

Further, the SJC pointed to the cross-examination of the witness, Jerry Johnson, to show that McCray's counsel did question the witness about the petitioner's alcohol and substance abuse in an effort to show these admissions were not adopted.[5] The SJC noted that "defense counsel *did* ask Johnson about the [petitioner]'s use of drugs. Johnson confirmed that the [petitioner] had begun using drugs around the time he began associating with Fernandes and Williams, but never contradicted his assertion that the [petitioner] was sober

---

[5] The SJC also noted that the trial judge preempted the motion for a jury instruction on the adoptive admission. The trial judge told the jury that "they had to confirm that the [petitioner] heard any accusation against him and that a reasonable person would have challenged such accusations if they were untrue." *McCray*, 457 Mass. at 559, 931 N.E.2d at 455.

and rational when the others implicated him in the murder." *Id.*

It is be kept in mind that the *Strickland* standard ". . . does not require that counsel jump through every conceivable hoop, or engage in futile exercises." *United States v. Pellerito*, 878 F.2d 1535, 1540 (1st Cir. 1989); *see also United States v. Cronic*, 466 U.S. 648, 656 n. 19 (1984). If an objection would be futile, *Strickland* does not require that counsel raise it. The SJC's disposition of this aspect of McCray's *Strickland* claims can in no way be deemed an unreasonable application of the law of that case and its progeny.

Fourth, McCray briefly argues in his petition that counsel was ineffective in failing to get a jury instruction regarding humane practice. The petitioner alleges that the jury should have been instructed to consider his mental state at the time his statements to the police were made to determine whether the jury should consider them as evidence. (#1 at 6 ¶ 12(a)) If McCray is referring to Johnson's testimony as to what McCray said, the SJC noted that "[t]he judge delivered a humane practice instruction before Johnson testified." *McCray*, 457 Mass. at 558, n. 11, 931 N.E.2d at 45, n. 11. The Court concludes that the claim, whatever it be, is undeveloped and is, therefore, waived. "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

argumentation are deemed waived."' *United States v. Jiminez*, 498 F.3d 82, 88 (1st Cir. 2007) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990)(footnote omitted)). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do [petitioner's] work, create the ossature for the argument, and put flesh on its bones." *Zannino*, 859 F.2d at 17.

Fifth, McCray claims that counsel was ineffective in failing to suppress statements regarding the urination of the petitioner onto the victim. He claims that these inflammatory statements, which evidenced that the petitioner urinated into the victim's mouth under Fernandes' direction, prejudiced him against the jury. (#15) However, the SJC ruled that defense counsel would have not prevailed even if he had sought *in limine* to exclude these statements. The statements of urination were essential to a material element of the Commonwealth's case. Not only was this evidence needed to prove the petitioner's active participation in the crime, but this urination also evidenced

extreme atrocity or cruelty,[6] which is an element of first degree murder. An objection to the admissibility of this evidence would have been futile, and McCreay's counsel did not was not ineffective in determining not to raise an objection.[7] The SJC's rulings on this issue were not unreasonable.

Sixth, McCray argues that counsel was ineffective in not adhering to the defense strategy of diminished capacity[8] during his closing arguments and subsequently denigrating the defense's only witness. (#15) Specifically, he argues that trial counsel's closing argument completely undermined the sole theory of defense in a way that violated his due process rights under the Sixth Amendment.[9]

---

[6]

Evidence of extreme atrocity or cruelty includes "'indifference to or taking pleasure in the victim's suffering, consciousness and degree of suffering of the victim, . . . and disproportion between the means needed to cause death and those employed.'" *McCray*, 475 Mass. at 560, 931 N.E.2d. at 455 (quoting *Commonwealth v. Cunneen*, 389 Mass. 216, 227, 449 N.E.2d 658, 665 (1983)).

[7]

The SJC also noted that these statements were "probative of the defense's theory that the [petitioner] was a follower." *McCray*, 457 Mass. at 560, 931 N.E.2d at 456. Since the testimony (both from Johnson and the tape recording of Fernandes) stated that McCray urinated on the victim *only* after being told to do so by Fernandes, it showed the petitioner as the follower and Fernandes as the leader.

[8]

The SJC also noted that defense counsel did not use a diminished capacity defense during the trial. "Defense Counsel's theory at trial was that the [petitioner] did not share the intent to commit murder with his companions." *McCray*, 457 Mass. at 560, 931 N.E.2d at 456.

[9]

In *Dobbs v. Zant*, 506 U.S. 357, 358-59 (1993), the Supreme Court did say that the closing arguments of defense counsel can be an important basis for ineffective assistance of counsel claims.

In his closing argument, defense counsel said to the jury "there was not a great deal of significance to [Dr.Cohen's] testimony." The petitioner asserts that this statement constituted an abandonment of the trial strategy by the defense counsel and, ultimately, a violation of his rights.

The SJC looked at this quote in the context of the entire closing argument[10] and found that defense counsel did not abandon the defense strategy. The SJC noted that:

> Defense counsel's closing argument mirrored the conclusions of the [petitioner's] psychiatrist. He told the jury that the defendant was an 'easily led . . . "schlepp"' who was 'not able to think for himself.' However, he also stated that the psychiatrist's testimony did not have a 'great deal of significance' *except* to show that the [petitioner]'s intelligence was very low and that he was a 'mildly retarded . . . follower.' . . . A fair reading of defense counsel's words indicates that he was encouraging the jury to consider all the evidence showing that the [petitioner] did not share Fernandes's intent on the night of the murder.

*McCray*, 457 Mass. at 560-61, 931 N.E.2d at 456 (emphasis added).

The SJC ruled that, based on the record, that defense counsel stayed true to his defense strategy that McCray lacked the requisite intent to commit murder

---

[10]

The SJC cited *Commonwealth v. Nieves* as justification for looking at the entire argument. 249 Mass. 763, 772, 711 N.E.2d 571, 577 (1999) (statements during closing arguments evaluated in context of entire argument); *McCray*, 457 Mass. at 561, 931 N.E.2d at 456.

during the closing argument. This ruling was surely not an unreasonable application of the *Strickland* standard.

*Ground Two: A Finding of Second Degree Murder was Required*

McCray argues that the SJC erred in not reducing the petitioner's murder conviction from first to second degree. He asserts that his motion for a required finding of second degree murder should have been allowed in light of the ineffectiveness of counsel, his mental condition, and (arguably more important), his substantially lesser degree of culpability in the murder. Under Mass. Gen. L. c. 278 § 33E,[11] the SJC has the extraordinary power to direct the entry of a lesser verdict if justice so required. In this case, the SJC declined to use this authority and affirmed the conviction for first degree murder.

For present purposes, the salient point is that the SJC's refusal to exercise its discretion to exercise this power in the instant case is a matter of *state* law, not federal law. Asserted errors of state law cannot form the basis of habeas relief; there has to be a violation of federal constitutional law. *Molina v. Roden,* 2012 WL 1866195, at *9 (D. Mass. May 21, 2012) (citing *LeBeau v. Roden,* 806 F. Supp.2d 384, 404 (D. Mass. 2011); *Estelle v. McGuire,* 502 U.S. 62, 67-68

---

[11] See *supra* n.4.

(1991)). The SJC's decision not to exercise its authority to reduce the conviction does not implicate any federal constitutional rights unless the evidence was insufficient to support a conviction for first degree murder. On the record before it, the evidence was sufficient. Consequently, there is no basis on which to grant habeas relief; the issue is purely one of state law.

### III. Recommendation

At bottom, McCray's habeas petition lacks merit. Thus, I RECOMMEND that the Final Judgment enter DISMISSING his petition on the merits.

### IV. Review by the District Judge

The parties are hereby advised that any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271, 273 (1st Cir. 1988); *United*

*States v. Emiliano Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140, 148-49 (1985).

/s/ *Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

March 27, 2014.